UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**KENNETH FREDERICK FECHTER** and
**WENDY SUE FECHTER**,

Case No. **10-62688-7**

Debtors.

**MEMORANDUM OF DECISION**

At Butte in said District this 19th day of May, 2011.

In this Chapter 7 case the Office of U.S. Trustee ("UST") filed a Motion to Dismiss ("Motion") (Docket No. 16) this case under 11 U.S.C. §§ 707(b)(1) based on the presumption of abuse under § 707(b)(2)(A)(i). The Debtors filed an objection admitting that the presumption of abuse exists but contending that, because their child support income would be deducted in a Chapter 13 case, requiring conversion to Chapter 13 would be an absurd and senseless result, and the Court should take these "special circumstances" into account and conclude that the presumption of abuse is rebutted under § 727(b)(2)(B). A hearing on the Motion was held at Great Falls on March 11, 2011. Debtors appeared represented by attorney Gary S. Deschenes ("Deschenes") of Great Falls, and Debtor Wendy Sue Fechter ("Wendy") testified. The UST was represented by attorney Daniel P. McKay ("McKay"). Without objection the Court took judicial notice of Debtors' Exhibits ("Ex") A, B and C, which are Debtors' Form B22A, B22C and Schedules I and J, respectively. At the conclusion of the parties' cases-in-chief the Court granted the parties time to file briefs, which have been filed and reviewed by the Court together with the record and applicable law. This matter is ready for decision. For the reasons set forth below the Debtors' objection is overruled, the UST's Motion is granted and this case is dismissed for abuse

1

under § 707(b)(2)(A)(i).

This Court has jurisdiction of this case under 28 U.S.C. § 1334(a). The UST's Motion to Dismiss is a core proceeding under 28 U.S.C. §§ 157(b)(2). This Memorandum includes the Court's findings of fact and conclusions of law.

## FACTS

Debtors Kenneth and Wendy Fechter are married and live in Great Falls, Montana. Ex. C states that they have two children ages 15 years and 5 months. Wendy testified that she also has a 19-year old daughter who attends college in Hawaii[1]. Wendy receives child support for her older child living in Debtors' home, in the amount of $1,364. She testified that the child support payments expire in 2 years when the child turns 18.

According to their Schedule I, Ex. C, Kenneth is employed as a civil engineer, and Wendy has been employed by Skywest Airlines for two years as a "Cross Util. Agent." Wendy testified that she also works as a realtor in California.

Debtors filed their voluntary Chapter 7 petition on November 16, 2010, with their Schedules and Statement of Financial Affairs ("SOFA") and completed Form B22A which was admitted as Ex. A. Debtors' Schedule F lists $173,363.60 in unsecured debt. Wendy testified that their unsecured debt includes mortgage payments which they placed on their credit cards, and also debt arising from a failed bar and restaurant which Kenneth was involved in which they also charged on their credit cards.

Items 1 and 2 of the SOFA set forth the Debtors' income, whether from employment,

---

[1] Wendy testified that Hawaii has a reciprocal in-State tuition agreement with the State of Montana, and that her school in Hawaii has a specialized education program in her field of study.

business or other.  Wendy's income from Skywest Airlines is stated on Item 1 as $4,309.65 in 2010; $8,046.33 in 2009; and $1,445.00 in 2008.  Her income as a "real estate realtor" in Item 1 is stated as $1,538.00 in 2010; $0 in 2009 and 2008.  Wendy's income in Item 2 of the SOFA from "LB Brokerage Inc." is stated as $1,583.00 in 2010; $0 in 2009; and $12,915.12 in 2008.  Her income from "Regency One Inc" is stated as $0 in 2009 and 2010, and $3,041.00 in 2008.

Ex. A is Debtors' Form B22A ("Chapter 7 Statement of Current Monthly Income and Means-Test Calculation").  On page 3 of Ex. A, Line 15, after comparing their annualized current monthly income under § 707(b)(7) with the applicable median family income, Debtors checked the box indicating that they are above-median income.

Debtors completed the expense portion of the means test, filling out expenses allowed under national and local standards.  At Line 42 of Ex. A, "Deductions for Debt Payment" Debtors listed a $1,469.00 monthly mortgage payment for their residence and a monthly payment for a 2010 Mercedes in the amount of $805.76.  Line 50 of Ex. A shows a monthly disposable income calculated under § 707(b)(2) in the amount of $979.84, which Line 51 calculates totals $58,790.40 over 60 months.  Applying that amount on Line 52, Debtors were required to check the box at the top of page 1 of Ex. A which states:  "The presumption arises."

Part VII of Ex. A ("Additional Expense Claims") lists business expenses in the monthly amount of $462.24 and "child support" in the amount of $1,364.00.

Ex. B is a Form B22C which Debtors explain they filled out to compare what their disposable income would be in a Chapter 13 case.  The current monthly income calculated in Ex. B is the same as calculated on Ex. A.  The total expenses allowed under IRS standards on both Ex. A and B is calculated in the amount of $3,975.71.  The total under Subpart D ("Total

3

Deductions from Income") is calculated as $6,861.59 on both Ex. A and B.

Line 54 of Ex. B is where the calculation of disposable income begins to differ from Ex. A. At line 54 of Ex. B the Debtors deduct $1,364 in child support payments for dependent child from their current monthly income, leaving them with a negative monthly disposable income calculated under 11 U.S.C. § 1325(b)(2) in the amount of ($384.16). At Line 60 the Debtors list a total of $902.99 in "Other expense" which they claim are required for their health and welfare, comprised of business expenses ($462.24); 401(k) ($87.50); and TSP contribution ($353.25). Wendy testified that she cannot come up with additional money to make plan payments in a Chapter 13 case. She testified that Ken will not receive any raises for at least a year.

Debtors' Schedules I and J (together Ex. C) list their current income and expenses. Schedule I lists Wendy's monthly wages from Skywest Airlines as $239.24, plus another $1,364 in alimony, maintenance or support on line 10. Wendy lists no income as a realtor on Schedule I, and their total combined monthly income is stated in the amount of $5,552.97[2].

Schedule J lists a total of $6,402.93 in current monthly expenditures. That amount includes $848 per month for food; $383.00 for clothing which includes Kenneth's uniforms; $304 for medical and dental expenses above that covered by insurance; $280 for transportation not including car payments; the $805 Mercedes payment; $461.93 in regular business expenses; $210 for miscellaneous care items/haircuts/pets; $200 for monthly "trips to CA–son", and

---

[2]On cross examination Wendy agreed that Kenneth is paid bi-weekly, and that their gross income would be higher on Schedule I if it were calculated by multiplying their income stated on their payment advices by the number 26, and dividing that result by 12. Deschenes disagreed on the proper way to compute current monthly income. The Court noted that there is a discrepancy in current monthly income shown between Debtors' Schedule I and Form 22. It is not necessary to resolve that discrepancy in order to decide the UST's Motion.

another $300 described on the continuation page as "daughter college expenses." Wendy testified that she helps her daughter out with money for college tuition and books.

Wendy testified that the $805 payment for the Mercedes was her "only option" for a vehicle. She testified that she had a Mercedes with high mileage which developed mechanical problems with its steering. She tried to buy a used vehicle but she testified that she was not able to, so her only option was to trade in her Mercedes for a new Mercedes which she financed at an interest rate of fifteen percent (15%). On cross examination Wendy testified that the high interest rate was because of their credit rating.

Asked about the $461.93 in business expenses on line 16 of Schedule J, which is itemized on the last page of Ex. C[3], Wendy testified that she is in the real estate business in California, which she performs over the internet, and that the $461.93 in business expenses is incurred for her California real estate business and would be $0 if she discontinued. She testified that she just renewed her real estate license in California, and may continue to work there. She also testified that she will try to get her real estate license in Montana, but that there is a limiting factor for her returning to work in that child care would cost her $700 per month. She has no sales pending in California.

The UST filed a "Statement of Presumed Abuse" (Dkt. 9) on December 23, 2010, advising Debtors that their case should be presumed an abuse under § 707(b). The Notice advises Debtors that they may rebut the presumption of abuse only if special circumstances can be demonstrated under § 707 (b)(2)(B). The UST filed the instant Motion to Dismiss on January

---

[3]The final page of Ex. C itemizes the $461.93 in business expenses for: Office expenses and supplies ($79.00); travel and entertainment ($38.00); legal/accounting/other professional fees ($79.58); postage ($32.00); advertising ($108.35) and office fees ($125.00).

24, 2011.

## DISCUSSION

Dismissal or conversion of Chapter 7 bankruptcy cases is governed by 11 U.S.C. § 707(b). The Chapter 7 case of an individual debtor, whose debts are primarily consumer debts, may be dismissed under § 707(b)(1) if a bankruptcy court finds, after notice and hearing, "that the granting of relief would be an abuse of the provisions of" Chapter 7. The determination as to whether "abuse" exists in a given case is determined by applying the objective test found at § 707(b)(2) and/or the subjective test found at § 707(b)(3). The objective test of § 707(b)(2) is commonly referred to as the Means Test, and is the basis for the UST's Motion. The presumption of abuse arises under § 707(b)(2)(A)(i) which provides:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of –
>
> (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $7,025, whichever is greater; or
>
> (II) $11,725.

§ 707(b)(2)(A)(i).

> The United States Supreme Court this year explained the purpose of the Means Test:
>
> "Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BACPA or Act) to correct perceived abuses of the bankruptcy system." *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. _, __, 130 S.Ct. 1324, 1329, 176 L.Ed.2d 79 (2010). In particular, Congress adopted the means test – "[t]he heart of [BAPCPA's] consumer bankruptcy reforms," H.R.Rep. No. 109-31, pt. 1, p. 2 (2005) (hereinafter H.R. Rep.), and the home the statutory language at issue here – to help ensure that debtors who *can* pay creditors *do* pay them. See, *e.g., ibid.* (under BAPCPA, "debtors [will] repay creditors the maximum they can afford").

*Ransom v. FIA Card Services, N.A.*, __ U.S. __, 131 S.Ct. 716, 721, 178 L.Ed.2d 603 (2011) (emphasis in original).

Debtors concede that the presumption of abuse arises under § 707(b)(2)(A), but they argue that special circumstances rebut the presumption of abuse under § 707(b)(2)(B)(i). They contend, because their child support income would be deducted in the disposable income test in Chapter 13 and eliminate any plan payment, that applying the presumption of abuse to dismiss would lead to a senseless or absurd result. The UST argues that the Chapter 13 hypothetical case does not rebut the presumption of abuse.

Debtors cite *Hamilton v. Lanning*, __ U.S. __, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010), which they argue is "directly on point" when the Supreme Court construed the "disposable income" requirement of § 1325(b)(3). Debtors contend that *Lanning* does not require the "senseless result" that Debtors should be in a Chapter 13 Plan that has no plan payment. However, Debtors' argument is based upon the Court accepting *in toto* their contention that they cannot make any payments in a Chapter 13 Plan, based on their Schedules I and J and Ex. B. The Court does not agree that *Lanning* is directly on point. *Lanning* is distinguishable factually from the instant case, and is further distinguishable since its holding is based on a different statute.

The facts in *Lanning* involved a Chapter 13 case, whereas the instant case is a Chapter 7. Lanning had received a one-time buyout from a former employer which greatly affected her gross income and her disposable income calculated under 11 U.S.C. § 1325(b). 130 S.Ct. at 2470. The instant case being a Chapter 7 case, the calculation of Debtors' disposable income is not before the Court at this time.

7

The UST argues that in a Chapter 13 case the Trustee would be involved to assess the Debtors financial situation and weigh in on the construction and scope of § 1325(b)(2). The Court agrees. Debtors did not call the Chapter 13 Trustee to testify at the hearing. The Court advised counsel at the hearing that its focus is narrow, and is on whether "special circumstances" are demonstrated under § 707(b)(2)(B) to rebut the presumption of abuse. Debtors' admit that the presumption of abuse exists, and they have the burden of demonstrating special circumstances. The holding in *Lanning* is not, as Debtors argue, directly on point to rebut the presumption.

While the Court in *Lanning* included a discussion quoted below regarding § 707(b)(2), the holding was focused on § 1325:

> Consistent with the text of § 1325 and pre-BAPCPA practice, we hold that when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation.

130 S.Ct. at 2478.

This Court is not engaged in calculating the Debtors' disposable income in this Chapter 7 case. Thus, it would not be appropriate for the Court to decide the UST's Motion based on a holding which construes a statute under Chapter 13. Fundamental canons of statutory construction include that courts generally avoid construing one provision in a statute so as to suspend or supersede another provision. *Rake v. Wade,* 508 U.S. 464, 471-72, 113 S.Ct. 2187, 2192, 124 L.Ed.2d 424 (1993). Courts should disfavor interpretations of statutes that render statutory language superfluous, and so long as there is no positive repugnancy between two laws, a court must give effect to both. *Connecticut National Bank v. Germain*, 503 U.S. 249, 252-54,

112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992). Therefore, any determination of Debtors' disposable income in a hypothetical Chapter 13 is premature, and cannot constitute grounds on which to find that the presumption of abuse under § 707(b)(2) is rebutted by special circumstances.

> In *Lanning* the Supreme Court wrote:
>
> The availability of Chapter 7 to debtors like respondent who have above-median incomes is limited. In respondent's case, a presumption of abuse would attach under § 707(b)(2)(A)(i) because her disposable income, "multiplied by 60," exceeds the amounts specified in subclauses (I) and (II). See also § 707(b)(1) (allowing a court to dismiss a petition filed by a debtor "whose debts are primarily consumer debts ... if it finds that the granting of relief would be an abuse of the provisions of this chapter"); App. 86-88 ("Notice to Individual Consumer Debtor under § 342(b) of the Bankruptcy Code") ("If your income is greater than the median income for your state of residence and family size, in some cases, creditors have the right to file a motion requesting that the court dismiss your case under § 707(b) of the Code"). Nevertheless, petitioner argues, respondent might have been able to overcome this presumption by claiming that her case involves "special circumstances" within the meaning of § 707(b)(2)(B)(i). Section 707 identifies examples of "special circumstances" a "serious medical condition or a call or order to active duty in the Armed Forces," *ibid.*, and petitioner directs us to no authority for the proposition that a prepetition decline in income would qualify as a "special circumstance." In any event, the "special circumstances" exception is available only to the extent that "there is no reasonable alternative," *ibid.*, a proposition we reject with our interpretation of § 1325(b) today.

130 S.Ct. at 2477.

This portion of the *Lanning* decision addresses § 707(b)(2)(B), but was not the basis for the holding, and does not support the Debtors' position. The Supreme Court rejected the argument that a prepetition decline in income would qualify as a "special circumstance," *Id.*, and this Court sees no reason why a hypothetical postpetition decline in income would qualify as a special circumstance any more than a prepetition decline. This Court further notices that the special circumstances exception is available only to the extent that there is no reasonable

9

alternative under § 707(b)(2)(B)(i). *Lanning*, 130 S.Ct. at 2477. With respect to Wendy's contention that she had no reasonable alternative to paying $805.76 per month for a new Mercedes, the Court rejects that testimony as beyond belief.

This Court construed § 707(b)(2)(B) *In re Martellaro*, 404 B.R. 548, 561-62 (Bankr. D. Mont. 2008):

> Section 707(b)(2)(B) provides:
>
> (B)(i) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.
>
> (ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide--
>
> > (I) documentation for such expense or adjustment to income; and
> >
> > (II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.

Debtors argues that their loss of child support income payments in two years after Wendy's child reaches 18 constitutes "special circumstances" which rebut the presumption of abuse under § 707(b)(2)(B)(i). Their Ex. B at Line 54 reduces their disposable income by the entire amount of child support, $1,364. Then at Line 60 they deduct another $902.99 in additional expenses including a 401(K) contribution and a TSP contribution.

The Ninth Circuit in *In re Egebjerg*, 574 F.3d 1045, 1049-50, 1053 (9th Cir. 2009) held that repayment of retirement plan loans may not be included for purposes of the means test under § 707(b)(2), and does not qualify as "Special Circumstances" under § 707(b)(2)(B)(i). In the

context of contributions to voluntary retirement plans such as Debtors' $87.50 401(K) contribution and $353.25 TSP contribution, under controlling Ninth Circuit authority the IRS guidelines provide specific guidance that they are not a necessary expense, in any amount. Congress expressly gave Chapter 13 debtors the ability to deduct 401(k) payments from their disposable income calculation, § 1322(f), but did not included any similar exemption for Chapter 7 debtors." 574 F.3d at 1050. Further, "[c]ontributions to voluntary retirement plans are not a necessary expense. IRM § 5.15.1.23"). *Id.* at 1052. Therefore, Debtors' expense claims on Line 60 of Ex. C for 401(K) and TSP contributions cannot be "special circumstances."

In considering special circumstances this Court looks directly to § 707(b)(2)(B), as specifically authorized by § 1325(b)(3), requiring itemized documentation of expenses and a detained explanation of the "special circumstances" that justify the additional expenses for which no reasonable alternative exists. *Egebjerg*, 574 F.3d at 1053. The UST argues that Debtors have failed to identify any special circumstances, for which there is no alternative, that justify additional expenses which would rebut the presumption of abuse.

In considering Wendy's business expenses, stated as $462.24 on Ex. A and B but itemized on the last page of Ex. C in the total amount of $461.93, the Court finds that they are not probative of special circumstances for which there is no alternative. Wendy testified that her $462.24 in monthly expenses are for her California real estate business. But since 2009, according to Debtors' SOFA, Wendy has earned a total of $1,538 in her real estate business. She testified that she has no pending sales, and Debtors' own statements show that her real estate business is operating at a loss. Therefore her $462.24 in monthly business expenses are not special circumstances for which there is no alternative.

11

Turning to the loss in child support in two years, the UST argues that there is no limitation on the Court's discretion to determine how much of Debtors' child support income should be excluded from current monthly income ("CMI") as "reasonably necessary to be expended for such child" under § 1325(b)(2), citing *In re Van Bodegom Smith*, 383 B.R. 441, 448 (Bankr. E.D. Wis. 2008).  On Ex. B, their hypothetical Chapter 13 Form B22C, at Line 54 the Debtors deducted from their CMI the entire amount of child support income, $1,364.00.  Based on that, Debtors argue that they have a negative disposable income at Line 59 in the sum of ($384.16) available for plan payments, and that forcing them into a Chapter 13 case would be senseless.

The explanation at Line 54 of Ex. B states:  "Support income.  Enter the monthly average of any child support payments . . . for a dependent child, reported in Part I, that you received in accordance with applicable nonbankruptcy law, to the extent reasonably necessary to be expended for such child."  Debtors entered the entire amount of child support received, $1,364.00.  The UST argues that it is not appropriate for the Court to decide the issue regarding child support based on the slender record developed at the hearing.

The Ninth Circuit Bankruptcy Appellate Panel ("BAP") described its analysis of disposable income under § 1325(b)(2) and (b)(3) in *American Express Bank, FSB v. Smith (In re Smith)*, 418 B.R. 359, 368 (9th Cir. BAP 2009):

> Under the statute, a debtor may deduct from income those expenses reasonably necessary "for the maintenance or support of the debtor or a dependent of the debtor."  11 U.S.C. § 1325(b)(2)(A)(i).  Thus, we read sections 1325(b)(2) and (b)(3) in sequence, as follows:  if an expense is not reasonably necessary for the debtor's and/or dependants' maintenance and support, the inquiry ends at section 1325(b)(2) as there is no "amount" to determine in section 707(b)(2) via section 1325(b)(3).  Stated otherwise, there is no corresponding amount to

      subtract from the income component to get to what is "disposable" for the above-median income debtor.

      If the expense is reasonably necessary for the debtor's and/or dependants' maintenance and support, then section 1325(b)(3) requires the court to determine the *amount* in accordance with section 707(b)(2). In other words, sections 1325(b)(2) and (b)(3) require a two-step inquiry.

*Smith*, 418 B.R. at 368. (Emphasis in original).

    In the instant case Debtors deduct all of Wendy's $1,364.00 in child support income at Line 54 of Ex. B, without providing enough detail for the Court to make its determination under *Smith* of the amount reasonably necessary, and without itemizing each expense to demonstrate special circumstances as required under § 707(b)(2)(B)(ii). That lack of evidence weighs against the Debtors as the parties with the burden of rebutting the presumption of abuse.

    Section 707(b)(2)(B)'s "special circumstances" contemplates circumstances beyond a debtor's reasonable control, such as a "serious medical condition, or a call or order to active duty in the Armed Forces." *Lanning*, 130 S.Ct. at 2477; *Martellaro*, 404 B.R. at 562. This Court *In re Tranmer*, 355 B.R. 234, 250 (Bankr. D. Mont. 2006), cited *In re Johns*, 342 B.R. 624, 629 (Bankr. E.D. Okla. 2006) (potential for zero payment plan not a special circumstance under § 707(b)(2)(B)). Debtors contend that making them go into a Chapter 13 Plan and propose a zero or *de minimis* payment is a "senseless result." That remains to be seen, but with respect to whether Debtors satisfied their burden of demonstrating special circumstances, the Court concludes that they have not based upon a hypothetical zero payment plan, and the Court continues to apply its holding in *Tranmer*, 355 B.R. at 250 (citing *Johns*, 342 B.R. at 629), with respect to special circumstances.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this case under 28 U.S.C. § 1334(a).

2. The UST's Motion to Dismiss is a core proceeding under 28 U.S.C. §§ 157(b)(2).

3. The presumption of abuse arises in this case under 11 U.S.C. § 707(b)(2)(A)(i).

4. Debtors failed their burden under 11 U.S.C. § 707(b)(2)(B)(i) of demonstrating special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

**IT IS ORDERED** a separate Order shall be entered in conformity with the above overruling Debtors' objection, granting the UST's Motion to Dismiss filed on January 24, 2011 (Dkt. 16) and dismissing this case for abuse under 11 U.S.C. § 707(b)(2)(A)(i).

BY THE COURT

*/s/ Ralph B. Kirscher*
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana